**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

VIRGINIA A. PURDOM,        )
                               )
           Plaintiff,     )
                               )
v.                         )  Case No. CIV-12-467-KEW
                               )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social        )
Security Administration,      )
                               )
          Defendant.    )

## OPINION AND ORDER

Plaintiff Virginia A. Purdom (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful

work which exists in the national economy. . ."  42 U.S.C.

§423(d)(2)(A).  Social Security regulations implement a five-step

sequential process to evaluate a disability claim.  *See*, 20 C.F.R.

§§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited

in scope by 42 U.S.C. § 405(g).  This Court's review is limited to

two inquiries:  first, whether the decision was supported by

---

[1]  Step one requires the claimant to establish that he is not
engaged in substantial gainful activity, as defined by 20 C.F.R. §§
404.1510, 416.910.  Step two requires that the claimant establish that
he has a medically severe impairment or combination of impairments that
significantly limit his ability to do basic work activities.  20 C.F.R.
§§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful
activity (step one) or if the claimant's impairment is not medically
severe (step two), disability benefits are denied.  At step three, the
claimant's impairment is compared with certain impairments listed in 20
C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed
impairment or impairments "medically equivalent" to a listed impairment
is determined to be disabled without further inquiry.  If not, the
evaluation proceeds to step four, where claimant must establish that he
does not retain the residual functional capacity ("RFC") to perform his
past relevant work.  If the claimant's step four burden is met, the
burden shifts to the Commissioner to establish at step five that work
exists in significant numbers in the national economy which the claimant
– taking into account his age, education, work experience, and RFC – can
perform.  Disability benefits are denied if the Commissioner shows that
the impairment which precluded the performance of past relevant work does
not preclude alternative work.  *See generally,* Williams v. Bowen, 844
F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on November 27, 1965 and was 45 years old at the time of the ALJ's decision. Claimant completed her high school education, an associate degree in college and a business technology degree from a vocational-technical school. Claimant has worked in the past as a cook, cashier, fast food cook, day care worker, and production line worker. Claimant alleges an inability to work

beginning February 3, 2010 due to limitations resulting from a heart murmur, Trichorhinophalangeal Syndrom ("TRPS"), chronic obstructive pulmonary disease ("COPD") with resulting breathing problems, osteoarthritis, scoliosis, migraine headaches, shoulder pain, problems with her hands, fingers, and wrists, back pain, hip pain, pain and muscle spasms in her legs, left knee problems requiring a total knee replacement, feet pain, sleep problems due to pain and COPD, frequent fatigue, dizziness, recurrent diarrhea, depression, anxiety attacks, memory problems, medication side effects, and the need to spend time lying down.

## Procedural History

On February 5, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 18, 2011, an administrative hearing was conducted before ALJ Charles Headrick in Tahlequah, Oklahoma. On May 19, 2011, the ALJ issued an unfavorable decision. On September 26, 2012, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in rejecting and improperly weighing the opinion of Claimant's treating physician.

## Evaluation and Consideration of the Treating Physician

In his decision, the ALJ found Claimant suffered from the severe impairments of COPD and scoliosis.  (Tr. 15).  The ALJ determined Claimant retained the RFC to perform sedentary work by occasionally lifting/carrying 10 pounds, frequently lifting/carrying less than 10 pounds, standing and/or walking  with normal breaks at least 2 hours in an 8 hour workday, pushing and/or pulling 10 pounds occasionally and less than 10 pounds frequently, and occasionally climb, balance, stoop, kneel, crouch, and crawl.  (Tr. 17).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of food order cook, charge account clerk, newspaper dressing, and inspector/checker, which the vocational expert testified existed in sufficient numbers nationally and regionally.  (Tr. 21-22).  The ALJ, therefore,

concluded Claimant was not disabled. (Tr. 22).

Claimant contends the ALJ failed to properly consider and weigh the opinion of Dr. Jenna Rogers, a treating physician. On September 17, 2010, Dr. Rogers completed a Medical Source Statement. Dr. Rogers was Claimant's treating physician for nine months. She diagnosed Claimant with COPD, TRPS, scoliosis, and back pain. Claimant was noted to have reduced range of motion in the hands, wrists, elbows, shoulders, knees, back, and hips. Dr. Rogers found Claimant to have joint deformity, reduced grip strength, impaired sleep, abnormal posture, tenderness, muscle spasms, and an abnormal gait. (Tr. 319).

Dr. Rogers also opined that emotional factors contribute to the severity of Claimant's symptoms and functional limitations. She identified depression and anxiety as psychological conditions affecting Claimant's pain. She estimated that Claimant frequently experienced pain severe enough to interfere with attention and concentration. Dr. Rogers found a marked limitation in Claimant's ability to deal with work stress. Medication caused the side effects of dizziness and drowsiness. (Tr. 320).

Dr. Rogers determined Claimant could sit for less than 15 minutes at a time before alternating postures and could stand/walk less than 15 minutes before returning to a sitting position. Claimant was required to elevate her legs while in a sitting

position to waist level. The total limit for Claimant to sit is 4 hours in an 8 hour workday. Claimant could stand or walk about before alternating postures sitting or lying down is less than 15 minutes. Claimant also needed to alternate postures by lying down or reclining in a supine position. (Tr. 321).

Claimant was estimated to need to sit or lie down before returning to standing or walking for 30 minutes. The total cumulative standing or walking during an 8 hour workday is 5 hours. The total cumulative resting/lying down or reclining in a supine position is 4 hours in an 8 hour workday. (Tr. 322).

Dr. Rogers found Claimant could occasionally lift/carry 1-5 pounds. She could occasionally balance or stoop. She could also occasionally forward, backward, rotate right, and rotate left her neck. Claimant could also occasionally reach, handle, and finger. She would require a walker to walk and stand on all surfaces and terrain for ambulation. (Tr. 324). Claimant was estimated to be absent from work more than 3 times per month. Claimant's restrictions first existed and persisted beginning November 19, 2009. (Tr. 325).

The ALJ gave "little weight" to Dr. Rogers' assessment declaring "it is not supported by the objective medical evidence or her treatment notes." (Tr. 19). Dr. Rogers' treatment notes indicated deformity of Claimant's left knee, scoliosis, and

7

degenerative changes in her hips and knees. Claimant was also found by Dr. Rogers during her treating examination to have diminished breath sounds, a heart murmur, mid-epigastric pain, and was tearful during the examination. (Tr. 232-35). Dr. Rogers noted multiple joint deformities and a dull psychological affect during an examination on December 17, 2009. (Tr. 228). On November 8, 2010, Claimant had an abnormally increased chest diameter and wheezes in her lungs. She also had degenerative changes in her musculoskeletal joints. (Tr. 328). Dr. Rogers again noted Claimant had multiple joint deformities, diminished breath sounds and a dull affect in April of 2011. (Tr. 329). Dr. Rogers' treatment notes contained some support for her findings.

On March 25, 2010, Claimant was evaluated by Dr. Adel Malati. Dr. Malati found Claimant suffered from COPD, a history of mitral valve prolapse, osteoarthritis of the left knee, TRPS, and scoliosis. In his assessment, Dr. Malati found

> The patient was seen walking in and out of the office without an assistive device. The patient has a slow, steady gait with slight limping on the left lower extremity. The patient has a full range of motion in the neck, shoulders, elbows, wrists, and hands. The patient has a good grip of 5/5 and equal bilaterally. The patient has short digits bilaterally and swollen knuckles. The patient also has a full range of motion in the back, except extension was limited to 10 degrees. The patient has scolioses in her thoracic spine. She also has exaggerated lumbar lordosis in her lumbar spine. Also the patient has a full range of motion in her hips

8

and knees.  The left knee was twice as large as the right
knee.  There was movement of the patella to the lateral
side.  Also the leg was about 30 degrees deviated
laterally beyond the left knee.  The patient's heel
walking, toe walking, and heel-to-toe walking was weak.
The patient also had full range of motion in her ankles.

(Tr. 261).

These findings in the objective record were largely in line
with Dr. Rogers' findings, a fact ignored by the ALJ.  Instead, the
ALJ preferred the opinion of the non-examining agency physician, Dr.
Penny Aber over the opinion of Dr. Rogers.  Dr. Aber completed a
Physical RFC Assessment on Claimant dated July 9, 2010.  She found
Claimant could occasionally lift/carry 10 pounds, frequently
lift/carry less than 10 pounds, stand/walk at least 2 hours in an
8 hour workday, sit for about 6 hours in an 8 hour workday and
engage in unlimited pushing and pulling.  Dr. Aber noted that the
record showed chest discomfort - squeezing or tightness after
walking with an intensity of 6/10.  Pain was usually accompanied by
anxiety attacks.  She found decreased breath sounds, RR&R without
murmurs, gallops, or rubs, ambulation without assistive devices with
a slow, steady gait with a slight limp on the left lower extremity.
Full range of motion in the neck, shoulders, elbows, wrists, and
hands.  Good hand grip 5/5 equal bilaterally, short digits
bilaterally and swollen knuckles.  Full range of motion except
extension was limited to 10 degrees.  Scoliosis in thoracic spine.

9

Exaggerated lumbar lordosis in lumbar spine with pain. Full range of motion in the hips and knees with the left knee twice as large as the right. She concluded Claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 305-07).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

10

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

"[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant." Williams v. Bowen, 844 F.2d 748, 757 (10th Cir. 1988); *see also* Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)("[t]he opinion of an examining

physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all."). The ALJ's task is to examine a non-examining physician's report to see if it outweighs the treating physician's report, not the other way around." Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)(quotation omitted).

The ALJ rejected Dr. Rogers' opinion without providing a sound basis for doing so while at the same time accepting the opinion of a non-examining agency physician, Dr. Aber. Moreover, both Dr. Rogers' treatment records and the objective medical evidence in the record in large measure supports the limitations found by Dr. Rogers. On remand, the ALJ shall re-evaluate Dr. Rogers' opinion under the Watkins standard, providing specific reasons for rejecting the same if it is indeed rejected, including specific references to the medical record and treatment records which are inconsistent with the opinion.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of

Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

       IT IS SO ORDERED this 20th day of March, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE